UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES BOWELL,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>F. MONTOYA, et al.,<br><br>　　　　Defendants. | 1:17-cv-00605-NONE-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED**<br>**(ECF No. 81.)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

**I.　BACKGROUND**

James Bowell ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. This case now proceeds with Plaintiff's First Amended Complaint, filed on May 3, 2018, against defendants Montoya and Carter for violation of due process under the Fourteenth Amendment, and against defendants Killmer and Lopez for conspiracy to place Plaintiff at risk of serious harm and failure to protect Plaintiff under the Eighth Amendment. (ECF No. 16.)[1]

On August 24, 2020, Plaintiff filed a motion for summary judgment. (ECF No. 81.) On September 14, 2020, defendants Carter, Killmer, Montoya, and Lopez ("Defendants") filed an

---

[1] On October 25, 2018, the court issued an order dismissing all other claims and defendants from this case, for Plaintiff's failure to state a claim. (ECF No. 20.)

opposition to Plaintiff's motion.  (ECF No. 83.)  On September 21, 2020, Plaintiff filed a reply to the opposition.  (ECF No. 84.)  Plaintiff's motion for summary judgment is deemed submitted.  Local Rule 230(*l*).

## II.     PLAINTIFF'S ALLEGATIONS AND CLAIMS

### A.     <u>Allegations</u>

Plaintiff's factual allegations in the operative First Amended Complaint follow.[2]

Plaintiff has been incarcerated since July 31, 1991. In Plaintiff's CDCR-SOMS Classification Chrono dated November 19, 2015, defendants Montoya and Carter incorporated fraudulent charges from Plaintiff's police criminal rap sheet, reflecting Plaintiff's arrest on April 4, 1987, for Willful Child Cruelty. Plaintiff was labeled a sex offender or child molester with an institutional "R" suffix placed onto the Chrono. Plaintiff alleges that the fraudulent information had nothing to do with his prison commitment offense, "one count of /failure to register/ PC 290 25 years to life sentence based upon PC 220 assault." ECF No. 16 at 3 ¶IV. Defendants Lopez and Killmer, intent on exercising their power and view created by defendant Montoya and defined via defendant Carter, interpreted an element having nothing to do with Plaintiff's primary offense. C/O Killmer told inmates that Plaintiff was incarcerated for rape after reviewing the prison computer system institutional SOMS Chrono that showed an arrest for rape with no disposition listed.

C/O Lopez gave inmate Sean Shupp the November 19, 2015, Chrono reflecting Plaintiff's life sentence, sex offender label with no visits with minors, and "R" suffix.  Plaintiff believes that defendants Killmer and Lopez intended to have Plaintiff murdered. On December 14, 2015, Plaintiff was assaulted by two inmates, Solman and Barger, on the CCI Facility A-yard. Plaintiff was attacked from behind and hit the ground knocked out cold. Plaintiff suffered a head injury, loss of hearing in his right ear, knee injury, and injury to his right eye causing him to see spots

---

[2] Plaintiff's First Amended Complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. <u>Jones v. Blanas</u>, 393 F.3d 918, 922-23 (9th Cir. 2004).  The summarization of Plaintiff's claims in this section should not be viewed by the parties as a ruling that the allegations are admissible.  The court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

and lines. Plaintiff alleges that he was attacked because of the November 19, 2015 Chrono and rape allegation that was ultimately dismissed in the interest of justice.

Later, Sgt. Doser and Lt. Hart set Plaintiff up to be assaulted again by placing inmates Solman and Barger back onto the same yard facility. The inmates should have been placed in administrative segregation and charged with battery on a prisoner. Sgt. Doser attempted to diffuse the original paperwork which described a crime of violence. The sole purpose of Defendants' actions was to harm Plaintiff. Sgt. Doser and Lt. Hart made a false entry on the record with the intent to murder Plaintiff, so they could silence his litigation.

Plaintiff seeks monetary damages.

**B.      Claims**

On October 25, 2018, the court found that Plaintiff states cognizable claims in the First Amended Complaint against defendants Montoya and Carter for violation of due process under the Fourteenth Amendment, and against defendants Killmer and Lopez for conspiracy to place Plaintiff at risk of serious harm, and failure to protect Plaintiff under the Eighth Amendment.

**1.      Due Process – Fourteenth Amendment Claim**

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).

The Due Process Clause itself does not confer on inmates a liberty interest in a particular classification status. See Moody v. Daggett, 429 U.S. 78, 88, n.9 (1976). The existence of a liberty interest created by state law is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. The assignment of an "R" suffix and the resulting increase in custody status and loss of privileges, without more, simply do not "impose[] atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life." Id.; Neal v. Shimoda, 131 F.3d 818, 830 (9th Cir. 1997); Cooper v. Garcia, 55 F.Supp.2d 1090, 1101 (S.D. Cal. 1999); Johnson v. Gomez, No. C95-20717 RMW, 1996 WL 107275, at *2-5 (N.D. Cal. 1996); Brooks v. McGrath, No. C 95- 3390 SI, 1995 WL 733675, at *1-2 (N.D. Cal. 1995). However, under certain circumstances, labeling a prisoner with a particular classification may implicate a liberty interest subject to the protections of due process. Neal, 131 F.3d at 827 ("[T]he stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections.")

To state a potentially colorable due process claim based on the allegedly improper classification as a sex offender, plaintiff must allege that the classification error caused him to be subjected to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

If a prisoner has a liberty interest in avoiding a sex offender label, he is constitutionally entitled to all of the process due under the standards set forth in Wolff, 418 U.S. at 539 (1974). See Sandin, 515 U.S. at 482 ("The time has come to return to the due process principles we believe were correctly established and applied in Wolff and Meachum[3]"). See also Keenan v. Hall, 83 F.3d 1083 (9th Cir. 1996) (embracing this proposition in the context of a prisoner's suit to participate in a hearing to determine his re-classification). "Due process requires that the inmate be notified of the reasons for his classification as a sex offender without the inmate's having to request that information." Neal, 131 F.3d at 832. "An inmate whom the prison intends to classify as a sex offender is also entitled to a hearing at which he must be allowed to call witnesses and present documentary evidence in his defense." Id. at 831.

### 2. **Failure to Protect – Eighth Amendment Claim**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir.

---

[3] Meachum v. Fano, 427 U.S. 215 (1976).

2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (internal citations and quotations omitted).  Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Id. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.  To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to his or her future health. Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Farmer, 511 U.S. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37. The deliberate indifference standard involves both an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995).  To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

**III.    SUMMARY JUDGMENT STANDARD**

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted);

Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). The dispute must be over a fact that is material, i.e., one that makes a difference in the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. Id. Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). The court must liberally construe *pro se* pleadings.[4]

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).

///

---

[4] In light of the Ninth Circuit's directive that a document filed *pro se* is "to be liberally construed," Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, and Rule 8(e) of the Federal Rules of Civil Procedure that "[p]leadings shall be construed so as to do justice," see Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007), the court shall strive to resolve this motion for summary judgment on the merits.

In judging the evidence at the summary judgment stage, the court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. American Int'l Group, Inc. v. American Int'l Bank, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing Celotex, 477 U.S. at 322, 106 S.Ct. 2548). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). The court determines only whether there is a genuine issue for trial. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### IV. PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

Plaintiff submitted the following statement of facts in support of his motion for summary judgment. (ECF No. 81 at 1.)

1. The specific material facts interrogatory answers has established defendant Carter as a liar employed since 1998 with CDCR with his motive and intent to harm Plaintiff by incorporating 4/4/87 arrest Willful Cruelty Child W/Possible INJ Death onto CDCR SOMS Classification Chrono 11/18/15 that adamantly had nothing to do with current incarceration. However, on July 23, 2020 Defendant Carter states: Plaintiffs [sic] California Penal Code §

///

273(A)(1) charge is related to the conviction for which Bowell is currently serving, in that Plaintiff was charged with both crimes. (Signed affidavit via D. Carter 7/23/20.)

2. The Staff Complaint Appeal/Grievance Log # CCI-0-15-00317 Second Level Response April 14, 2016 against defendants Carter, Montoya, Lopez, and Killmer located in the 1st Amended Complaint on pages 13-14, Filed 5/3/18 in this court is not reflected in the CDCR Tracking System as a staff complaint submitted by Byron M. Miller, Deputy Attorney General July 17, 2020 attaching 7/7/20 CDCR Record showing no staff complaints against any of the defendants ever, how can that be? (Theft of appeal/grievances to prevent due process is exactly why I had to force their reply via Superior Court and the Court of Appeal making third level response and exhaust administrative remedies.) Proof of theft and reason why, defendants are guilty of attempted murder, with injuries to me that cannot be overlooked for a mere $6,000 insulting my intelligence as a human being prisoner confined unlawfully at this very minute should be released from custody.

**IV.  PLAINTIFF'S MOTION**

Plaintiff's evidence includes his First Amended Complaint (ECF No. 16.); Defendant Carter's responses to Plaintiff's Interrogatories Nos. 3, 4, 5, and 6 (ECF No. 82 at 3-5.); 7/7/20 CDCR Record of Staff Complaints against defendants Carter, Montoya, Lopez, and Kilmer (ECF No. 82 at 6-9.); Defendants' response to Plaintiff's Request for Production No. 4 (ECF No. 82 at 10.); Defendant Carter's Affidavit signed 7/23/20 (ECF No. 82 at 5.); Staff Complaint Log #CCI-0-15-00317 Second Level Response April 4, 2016 (ECF No. 16 at 13-14.); and Affidavit by witness Jon Hoefling CDC #P-70104 signed 3/14/16 (ECF No. 16 at 18.).

The following is a summary of Plaintiff's arguments as found by the court.[5]

Plaintiff argues that defendant Carter is a liar employed since 1998 with CDCR with a motive and intent to harm Plaintiff by incorporating Plaintiff's 4/4/87 arrest record, which had nothing to do with Plaintiff's current incarceration, onto a CDCR SOMS Classification Chrono

///

---

[5] The court found it difficult to decipher Plaintiff's arguments in his motion for summary judgment.

dated 11/18/15. As evidence Plaintiff submits defendant Carter's response to Interrogatory No. 4 in which defendant Carter answers:

> "Defendant is informed and believes that Plaintiff's California Penal Code 273(A)(1) charge is related to the conviction for which Plaintiff is currently incarcerated, in that Plaintiff was charged with both crimes."

(ECF No. 82 at 3:19-21.)

Plaintiff argues that his Staff Complaint Log # CCI-0-15-00317 against defendants Carter, Montoya, Lopez, and Killmer was stolen to prevent due process, because the Staff Complaint is not reflected on CDCR's Record of Staff Complaints for these defendants. As evidence, Plaintiff submits a copy of the Second Level response to Plaintiff's Staff Complaint Log # CCI-0-15-00317 (ECF No. 16 at 13-14); and copies of four CDCR Records of Staff Complaints for defendants Carter, Montoya, Lopez, and Kilmer (ECF No. 82 at 6-9).

Plaintiff argues that Defendants' criminal activity is shown by the differences between defendant Carter's version and the actual Abstract of Judgment in cases PA003248/7-331-91 and BA191442/9-1-00, the differences being felony and misdemeanor.

Plaintiff alleges that he has been subject to retaliation for over 21 years due to prison officials review of fraudulent data on CDCR's SOMS.

Plaintiff proposes $125,000 to settle this case.

Plaintiff argues for investigation of CCI's staff complaint system to examine officers' lies and damaging falsehoods contained in their declarations.

Plaintiff argues that Defendants delivered mail -- the 11/18/15 Classification SOMS -- to inmate Shupp via C/O S. Lopez. Plaintiff submits as evidence the affidavit of witness Jon Hoefling, CDC #P-70104. (ECF No. 16 at 8.)

Plaintiff responds to $6,000 settlement offer by defense counsel and states that the agreement is for $125,000. Plaintiff argues that Defendants should face perjury charges for untrue references to SOMS instrument with intent to escape possible jury award of $2.6 million.

///

///

## V.   DEFENDANTS' OPPOSITION

Defendants argue that Plaintiff's motion for summary judgment should be denied as procedurally and substantively deficient because it does not contain a statement of undisputed facts discretely enumerating the facts relied upon, set forth any legal authority establishing the elements of his claims, or submit any evidence sufficient to meet that burden. Defendants argue that Plaintiff's arguments have no relevance to his due process and failure-to-protect claims against Defendants. Defendants contend that Plaintiff's limited evidence offers no support to his claims against Defendants, let alone every element of those claims.

Defendants set forth a description of the deficiencies identified in Plaintiff's motion. They argue that Plaintiff's "Statement of Disputed Facts" does not comply with the court's rules requiring Plaintiff to "discretely" enumerate each of his material facts and cite the evidence supporting each fact. They also argue that Plaintiff makes only generalized arguments in support of his contention that he is entitled to $125,000 from Defendants and uses evidence and conclusory statements that lend no support to Plaintiff's due process and failure-to-protect claims.  Defendants assert that Inmate Jon Hoefling's declaration, which is attached to Plaintiff's amended complaint, does not explain how he knows that Officer Lopez gave Plaintiff's classification chrono to inmate Shupp, or that Officer Kilmer told unidentified inmates that Plaintiff was "in for rape." The declaration lends no support to Plaintiff because Hoefling does not state that he personally observed the actions he alleges. Defendants argue that even if the declaration was based on personal knowledge, Defendants' interrogatory responses create a triable issue of fact as to Hoefing's contentions. (Defendant Miller verifies that Lopez "did not deliver or otherwise provide the Classification Committee Chrono . . . to inmate S. Shupp, and verifies that Killmer "never told an inmate that Plaintiff is incarcerated for rape or child molestation" (See Miller Declaration, ECF No. 83-1 ¶ 2, Exhs. A, B.))

Plaintiff responds that an examination of Plaintiff's medical reports will expose the mistruths depicting the events explained by defense counsel Mr. Miller. Claiming that he has no way to perform research because he is locked up for almost 24 hours per day, Plaintiff states that he finds it difficult to litigate his claim of attempted murder conspiracy by CDCR staff's abuse

of power. Plaintiff contends that he can use evidence found in his complaints filed in other cases to support his allegations against defendant Killmer.

**VI.  DISCUSSION**

Plaintiff fails to make arguments or present evidence in his motion for summary judgment supporting the elements to be proven in his due process and failure-to protect claims against Defendants. The court finds that Plaintiff has not proven his case, nor could a reasonable trier of fact decide in Plaintiff's favor, and shall recommend that Plaintiff's motion for summary judgment be denied.

**VII.  RECOMMENDATIONS AND CONCLUSION**

Based on the foregoing, **THE COURT HEREBY RECOMMENDS** that:

1.  Plaintiff's motion for summary judgment, filed on August 24, 2020, be denied; and

2.  This case be referred back to the Magistrate Judge for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** from the date of service of these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **seven (7) days** of the date the objections are filed. The parties are advised that failure to file objections within the specified time may waive the right to appeal the order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **January 19, 2021**           **/s/ Gary S. Austin**
                                                  UNITED STATES MAGISTRATE JUDGE