UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JAMES BOWELL,

        Plaintiff,

  vs.

F. MONTOYA, et al.,

        Defendants.

**1:17-cv-00605-NONE-GSA-PC**

**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED ON THE BASIS OF CLAIM PRECLUSION**
**(ECF No. 90.)**

**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS**

## I.       BACKGROUND

James Bowell ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. This case now proceeds with Plaintiff's First Amended Complaint, filed on May 3, 2018, against defendants Correctional Counselors F. Montoya and D. Carter for violation of due process under the Fourteenth Amendment, and against defendants Correctional Officers R. Killmer and S. Lopez for conspiracy to place Plaintiff at risk of serious harm and failure to protect Plaintiff under the Eighth Amendment. (ECF No. 16.)[1]

---

[1] On October 25, 2018, the court issued an order dismissing all other claims and defendants from this case, for Plaintiff's failure to state a claim. (ECF No. 20.)

On January 25, 2021, defendants Killmer, Montoya, Lopez, and Carter ("Defendants") filed a motion for summary judgment. (ECF No. 90.) On February 3, 2021, Plaintiff filed an opposition to the motion. (ECF No. 92.) On February 9, 2021, Defendants filed a reply to Plaintiff's opposition. (ECF No. 93.) Defendants' motion for summary judgment is deemed submitted. Local Rule 230(*l*).

## II.    PLAINTIFF'S ALLEGATIONS

Plaintiff's factual allegations in the operative First Amended Complaint follow[2]:

Plaintiff has been incarcerated since July 31, 1991. In Plaintiff's CDCR-SOMS Classification Chrono dated November 19, 2015, defendants Montoya and Carter incorporated fraudulent charges from Plaintiff's police criminal rap sheet, reflecting Plaintiff's arrest on April 4, 1987, for Willful Child Cruelty. Plaintiff was labeled a sex offender or child molester with an institutional "R" suffix placed onto the Chrono. Plaintiff alleges that the fraudulent information had nothing to do with his prison commitment offense, "one count of /failure to register/ PC 290 25 years to life sentence based upon PC 220 assault." ECF No. 16 at 3 ¶IV. Defendants Lopez and Killmer, intent on exercising their power and view created by defendant Montoya and defined via defendant Carter, interpreted an element having nothing to do with Plaintiff's primary offense. C/O Killmer told inmates that Plaintiff was incarcerated for rape after reviewing the prison computer system institutional SOMS Chrono that showed an arrest for rape with no disposition listed.

C/O Lopez gave inmate Sean Shupp the November 19, 2015, Chrono reflecting Plaintiff's life sentence, sex offender label with no visits with minors, and "R" suffix. Plaintiff believes that defendants Killmer and Lopez intended to have Plaintiff murdered. On December 14, 2015, Plaintiff was assaulted by two inmates, Solman and Barger, on the CCI Facility A-yard. Plaintiff was attacked from behind and hit the ground knocked out cold. Plaintiff suffered a head injury,

---

[2] Plaintiff's First Amended Complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004). The summarization of Plaintiff's claims in this section should not be viewed by the parties as a ruling that the allegations are admissible. The court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

loss of hearing in his right ear, knee injury, and injury to his right eye causing him to see spots and lines. Plaintiff alleges that he was attacked because of the November 19, 2015 Chrono and rape allegation that was ultimately dismissed in the interest of justice.

Later, Sgt. Doser and Lt. Hart set Plaintiff up to be assaulted again by placing inmates Solman and Barger back onto the same yard facility. The inmates should have been placed in administrative segregation and charged with battery on a prisoner. Sgt. Doser attempted to diffuse the original paperwork which described a crime of violence. The sole purpose of Defendants' actions was to harm Plaintiff. Sgt. Doser and Lt. Hart made a false entry on the record with the intent to murder Plaintiff, so they could silence his litigation.

Plaintiff seeks monetary damages.

## III.    PLAINTIFF'S CLAIMS -- LEGAL STANDARDS

On October 25, 2018, the court found that Plaintiff states cognizable claims in the First Amended Complaint against defendants Montoya and Carter for violation of due process under the Fourteenth Amendment, and against defendants Killmer and Lopez for conspiracy to place Plaintiff at risk of serious harm and failure to protect Plaintiff under the Eighth Amendment. (ECF No. 20.)

### 1.    Due Process – Fourteenth Amendment Claim

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).

The Due Process Clause itself does not confer on inmates a liberty interest in a particular classification status. See Moody v. Daggett, 429 U.S. 78, 88, n.9 (1976). The existence of a liberty interest created by state law is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. The assignment of an

"R" suffix and the resulting increase in custody status and loss of privileges, without more, simply do not "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.; Neal v. Shimoda, 131 F.3d 818, 830 (9th Cir. 1997); Cooper v. Garcia, 55 F.Supp.2d 1090, 1101 (S.D. Cal. 1999); Johnson v. Gomez, No. C95-20717 RMW, 1996 WL 107275, at *2-5 (N.D. Cal. 1996); Brooks v. McGrath, No. C 95- 3390 SI, 1995 WL 733675, at *1-2 (N.D. Cal. 1995). However, under certain circumstances, labeling a prisoner with a particular classification may implicate a liberty interest subject to the protections of due process. Neal, 131 F.3d at 827 ("[T]he stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections.")

To state a potentially colorable due process claim based on the allegedly improper classification as a sex offender, plaintiff must allege that the classification error caused him to be subjected to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

If a prisoner has a liberty interest in avoiding a sex offender label, he is constitutionally entitled to all of the process due under the standards set forth in Wolff, 418 U.S. at 539 (1974). See Sandin, 515 U.S. at 482 ("The time has come to return to the due process principles we believe were correctly established and applied in Wolff and Meachum[3]"). See also Keenan v. Hall, 83 F.3d 1083 (9th Cir. 1996) (embracing this proposition in the context of a prisoner's suit to participate in a hearing to determine his re-classification). "Due process requires that the inmate be notified of the reasons for his classification as a sex offender without the inmate's having to request that information." Neal, 131 F.3d at 832. "An inmate whom the prison intends to classify as a sex offender is also entitled to a hearing at which he must be allowed to call witnesses and present documentary evidence in his defense." Id. at 831.

///

---

[3] Meachum v. Fano, 427 U.S. 215 (1976).

## 2.    **Failure to Protect – Eighth Amendment Claim**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-33 (1994) (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. <u>Id.</u> at 833; <u>Hearns v. Terhune</u>, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. <u>Id.</u>; <u>e.g.</u>, <u>Farmer</u>, 511 U.S. at 847. To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." <u>Farmer</u>, 511 U.S. at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to his or her future health. <u>Id.</u> at 843 (citing <u>Helling v. McKinney</u>, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." <u>Farmer</u>, 511 U.S. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." <u>Id.</u> at 836-37. The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." <u>Id.</u> at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." <u>Id.</u> at 837; <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. <u>Farmer</u>, 511 U.S. at 842; <u>Wallis v. Baldwin</u>, 70 F.3d 1074, 1077 (9th Cir. 1995).

///

### 3.   **Conspiracy to Place Plaintiff at Risk of Serious Harm**

In the context of conspiracy claims brought pursuant to section 1983, a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." <u>Buckey v. County of Los Angeles</u>, 968 F.2d 791, 794 (9th Cir. 1992); <u>Karim-Panahi v. Los Angeles Police Department</u>, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. <u>Sykes v. State of California</u>, 497 F.2d 197, 200 (9th Cir. 1974). A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" <u>Franklin v. Fox</u>, 312 F.3d 423, 441 (9th Cir. 2001) (quoting <u>United Steel Workers of Am. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1540- 41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, <u>Hart v. Parks</u>, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting <u>Woodrum v. Woodward County, Oklahoma</u>, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" <u>Franklin</u>, 312 F.3d at 441 (quoting <u>United Steel Workers</u>, 865 F.2d at 1541).

## IV.   **SUMMARY JUDGMENT STANDARD**

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); <u>Washington Mut. Inc. v. U.S.</u>, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001); accord <u>Simmons v. Navajo Cnty., Ariz.</u>, 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he or she need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If the defendant meets his or her initial burden, the burden then shifts to the plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." Id. This requires the plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

However, in judging the evidence at the summary judgment stage, the court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The court determines only whether there is a genuine issue for trial. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

V.    DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Defendants submitted the following statement of facts in support of their motion for summary judgment. (ECF No. 90-3.) This statement of undisputed facts is submitted solely for the purpose of this motion for summary judgment.

///

///

# I. BOWELL RAISED THE SAME CLAIMS IN A PREVIOUSLY DISMISSED STATE-HABEAS PETITION.

## A. Bowell's Habeas Corpus Petition

1. In February 2016, Bowell filed a petition for writ of habeas corpus in state court making numerous allegations regarding his assault on December 14, 2015. (Defs.' Request for Judicial Notice (RJN) Ex 1.)

2. As relevant here, Bowell alleged that Counselors Montoya and Carter attempted to have him murdered and placed in harm's way "on the basis of an 'R' suffix fraudulent paperwork, improper practices and the Due Process of the CDC-602 grievances listed herein…" (Id. at RJN004.)

3. Bowell further alleged that Officer Killmer had him "attacked on 12-14-15 by two prisoners because of my 'R' suffix alleged sex offender rape offense." (Id. at RJN002.)

4. In addition, Bowell alleged that Officer Lopez intentionally gave "computer generated paperwork" to another inmate in order to have Bowell attacked. (Id. at RJN002-003.)

5. Bowell alleged these actions, among others, amounted to "cruel and unusual punishment" under the California constitution. (Id. at RJN003-004.)

6. Bowell also alleged that he had "no other alternative but to lodge in this court's jurisdiction my formal complaint pursuing safety…" and requested that the Court order the Warden at California Correctional Institution (CCI) to respond to his "grievance complaint forthwith." (Id. at RJN005-007.)

7. Finally, Bowell attached requests to CDCR officials that allegedly went unanswered, as well as an affidavit reiterating his claims against Defendants. (Id. at RJN005-007.)

## B. Bowell's "Supplemental Evidence" to his Habeas Petition

8. In May 2016, Bowell filed a document titled "Supplemental Evidence of Wrongdoing Reckless Disregard of Constitutional Rights Obligation to

Respond," in which he alleged that Counselor Montoya "unlawfully put alleged PC 273 Willful Child Cruelty arrest… onto a classification chrono with 'R' suffix making at appear as if I am a child molester." (RJN Ex. 2 at RJN014.)

9. Bowell also attached the November 18, 2015 chrono authored by Counselors Montoya and Carter, along with his administrative appeal related to his allegations against Defendants. (Id. at RJN019-021.)

10. Finally, Bowell requested that the court also order CCI's Warden to process his administrative appeal, in addition to providing him "any further relief deemed appropriate." (Id. at RJN015.)

## C.    The Superior Court's Orders

11. The superior court ruled on Bowell's petition in June 2016, describing his contentions therein as including "a multitude of allegations centering around having been assaulted by two inmates."  (RJN Ex. 3 at RJN048.)

12. As relevant here, the court noted that his allegations included "a conspiracy on the part of prison officials with inmates to murder him; daily threats of harm by correctional officers; [and] fraudulent paper work contributing to an 'R' Suffix which keeps him in danger of being assaulted." (Id.)

13. The court held that Bowell's "concerns regarding the conspiracy to have him murdered by prison personnel appear to be without evidence and conclusory." (Id.)

14. The court also noted that, if necessary, Bowell could have utilized CDCR's emergency appeals mechanism to address his safety concerns. (Id. at RJN049.)

15. Thus, Bowell's petition was denied with prejudice. (Id. at RJN047, 049.)

16. Bowell then filed a petition for rehearing, arguing, for the first time, that the court should order CDCR's Chief of Appeals to process his grievance. (RJN Ex. 4 at RJN051-052.)

17. The court responded to the petition, explaining that "the basis of [Bowell's] claim is conspiracy on the part of the prison to deny his constitutional rights, harm him, and theft of his mail," and finding that Bowell was "attempting to relitigate matters addressed" by the court in its June 2016 ruling. (RJN Ex. 5 at RJN087.)

18. Thus, the court found that Bowell's petition remained denied with prejudice. (Id. at RJN086-087.)

19. The superior-court docket does not reflect that the judgment was ever appealed or overturned. (RJN Ex. 6.)

## II. BOWELL WAS ASSIGNED AN "R" SUFFIX BY NON-DEFENDANTS IN 1991, AND THE "R" SUFFIX CONTINUED WHEN HE RE-ENTERED CDCR CUSTODY IN 2000.

20. Various suffixes, like an "R" suffix, may be affixed to an inmate's custody designation to indicate additional information relevant to the inmate's classification. (Carter Decl., ¶ 3; Cal. Code Regs. tit. 15 §§ 3377.1(c), (d) (rev. 2016).)[4]

21. An "R" suffix indicates that an inmate has a history of specific sex offenses. (Carter Decl., ¶ 3; Cal. Code Regs. tit. 15 § 3377.1(b).)

22. At any time during incarceration, a classification committee may affix an "R" suffix to an inmate's custody designation if the inmate has a record of arrest, detention, or has been charged with any offense listed in California Penal Code section 290. (Carter Decl., ¶ 3; Cal. Code Regs. tit. 15 § 3377.1(b)(3).)

23. The only effect of having an "R" suffix affixed is that the inmate cannot be housed at a Level I facility or camp (the lowest of four security levels), and instead must be housed at a facility with a secure perimeter (Level II or

---

[4] All citations to the California Code of Regulations are to the provisions operative in January 2016, at the time of Bowell's allegations against Defendants.

above). (Carter Decl., ¶ 3; see Cal. Code Regs. tit. 15 §§ 3377 (describing facility security levels), 3377.1(b)(10) (inmates with "R" suffix "shall not be assigned outside the security perimeter").)

24. In 1991, Bowell was convicted of Assault with Intent to Rape under California Penal Code § 220, which is a registrable offense under the Sex Offender Registration Act.[5] (Miller Decl., Ex. I, Pl.'s Dep. at 22:13-18; RJN Ex. 7; see Cal. Penal Code § 290(c).)

25. Thus, shortly after his incarceration with the California Department of Corrections and Rehabilitation (CDCR), he was assigned an "R" Suffix by non-party CDCR officials. (Miller Decl., Ex. I, Pl.'s Dep. at 35:19-36:23; Telles Decl., ¶ 3, Ex. A; Carter Decl. ¶ 3; see Cal. Code Regs. tit. 15 § 3377.1(b) ("R" suffix shall be affixed to inmates required to register under Penal Code § 290).

26. Bowell was released on parole in October 1997. (Telles Decl., ¶ 4, Ex. B.)

27. In December 1999, Bowell was charged with failure to register as a sex offender. (RJN Ex. 8 at RJN094-096.)

28. In September 2000, Bowell was convicted by a jury for failure to register as a sex offender. (RJN Ex. 9 at RJN097; Miller Decl., Ex. I, Pl.'s Dep. at 23:19-23, 33:21-25).

29. Upon Bowell's re-admission to CDCR, the "R" suffix remained assigned to his custody designation based on his sex crimes. (Miller Decl., Ex. I, Pl.'s Dep. at 35:19-36:23; Telles Decl., ¶ 6, Exs. D, E.)

30. Bowell is still incarcerated, and he still has the "R" suffix affixed to his custody designation. (Telles Decl., ¶¶ 2, 10.)

///

---

[5] 2 California Penal Code § 290—the "Sex Offender Registration Act"—governs who is required to register as a sex offender: individuals "convicted in any court of this state or in any federal or military court" of various enumerated sex offenses.

### III. COUNSELORS MONTOYA AND CARTER HELD A CLASSIFICATION HEARING FOR BOWELL IN 2015, BUT DID NOT ASSIGN HIS "R" SUFFIX.

31. On November 18, 2015, Counselors Montoya and Carter, as well as another CDCR official, held an initial Unit Classification Committee hearing to review Bowell's case factors and housing status. (Carter Decl., ¶ 3; Montoya Decl., ¶ 2; Telles Decl., ¶ 7, Ex. F.)

32. Shortly before the hearing, Counselor Montoya asked Bowell if he would like to waive his right to seventy-two hours' advance notice of the hearing or proceed with the hearing at a later date. (Montoya Decl., ¶ 3.)

33. Bowell indicated that he wanted to waive his right to seventy-two hours' notice, and signed a document affirming this waiver. (Montoya Decl., ¶ 3; Telles Decl., ¶ 9, Ex. H.)

34. The committee did not assign Bowell's "R" suffix during the hearing, or at all. (Carter Decl., ¶ 6; Montoya Decl., ¶ 4; Miller Decl., Ex. I, Pl.'s Dep. at 35:19-36:23; 39:12-40:9; Telles Decl., ¶ 6, Exs. D, E; Pl.'s Amen. Compl, ECF No. 17 at 17; Telles Decl., ¶ 9, Ex. G.)

35. The committee observed that Bowell's California Law Enforcement Telecommunication System or "CLETS" rap sheet showed that he had been arrested or received in custody for "Willful Cruelty Child w/Possible Inj. Death" under California Penal Code 273(A). (Miller Decl., Ex. I, Pl.'s Dep. at 46:17-25, 47:15-16; Pl.'s Amen. Compl, ECF No. 17 at 17; Carter Decl., ¶6; Montoya Decl., ¶ 6; Telles Decl., ¶ 9, Ex. G.)

36. The CLETS report indicated "no disposition available" for the willful child cruelty charge. (Telles Decl., ¶ 9, Ex. G.)

37. Bowell, however, admits he pled guilty to the willful child cruelty charge. (Miller Decl., Ex. I, Pl.'s Dep. at 47:15-16.)

///

38. In any event, CDCR regulations provide that even an inmate who has been arrested, but not convicted, of Penal Code 273(A) may have his visitation with minors limited to noncontact status. (Carter Decl., ¶ 6; Montoya Decl., ¶ 4; Cal. Code Regs. tit. 15 § 3173.1(e)-(f).)

39. Thus, based on the CLETS information, the committee determined that Bowell was ineligible for contact visits with minors under section 3173.1 and documented this determination on his November 18, 2015 classification chrono. (Carter Decl., ¶ 6; Montoya Decl., ¶ 4; Telles Decl., ¶ 8, Ex. G.)

40. This visiting restriction did not prevent Bowell from having any contact visits with minors because, as Bowell admits, he had no visitors to begin with. (Miller Decl., Ex. I, Pl.'s Dep. at 49:15-40:4.)

## IV. OFFICERS KILLMER AND LOPEZ DID NOT SHARE OR DISTRIBUTE BOWELL'S CLASSIFICATION INFORMATION WITH OTHER INMATES.

41. Officer Killmer did not allow inmate porters to look at his computer screen and observe Bowell's "R" suffix. (Killmer, ¶ 2.)

42. Bowell did not see Officer Killmer show any inmate information regarding his sex crimes. (Miller Decl., Ex. I, Pl.'s Dep. at 66:1-6.)

43. Bowell cannot identify any witnesses who personally observed Officer Killmer showing inmate information regarding his sex crimes to other inmates. (Id. at 67:8-69:23.)

44. Officer Lopez did not share Bowell's November 18, 2015 chrono with inmate Sean Shupp. (Lopez, ¶ 2.)

45. Bowell did not see Officer Lopez provide the chrono to Shupp. (Miller Decl., Ex. I, Pl.'s Dep. at 73:3-75:16.)

46. Inmate Shupp did not tell Bowell that he received a chrono from Officer Lopez. (Id. at 87:24-88:3.)

///

47. Bowell has not identified any witnesses who observed Officer Lopez sharing the chrono. (Id. at 87:24-88:3.)

## V.    BOWELL SPECULATES THAT HE WAS ASSAULTED BY TWO INMATES BECAUSE OF OFFICERS KILLMER AND LOPEZ.

48. Bowell was assaulted by two inmates on December 14, 2015, and blames the assault on Officers Killmer and Lopez for allegedly sharing information related to his sex-offender status with other inmates. (Amen. Compl., ECF No. 16 at 4.)

49. Over the years, Bowell had talked with other inmates about his rape conviction. (Miller Decl., Ex. I, Pl.'s Dep. at 22:13-21, 88:4-8.)

50. Bowell had given other inmates legal documents related to his conviction. (Id. 70:21- 23.)

51. Bowell contends that other non-party officers had previously passed out his classification chronos to inmates. (Id. at 87:4-23.)

52. When Bowell spoke to the inmates who attacked him, they did not attribute the attack to any information provided to them by Officers Killmer or Lopez. (Id. at 79:14-83:22.)

## VI.    DEFENDANTS' MOTION

Defendants' evidence includes Plaintiff's First Amended Complaint (ECF No. 16); Declaration of Byron J. Miller, California Attorney General's Office, defense counsel (ECF No. 90-4); Declaration of N. Telles, Litigation Coordinator at R.J. Donovan Correctional Facility (ECF No. 90-5); Declaration of D. Carter, Defendant (ECF No. 90-6); Declaration of F. Montoya, Defendant (ECF No. 90-7); Declaration of R. Killmer, Defendant (ECF No. 90-8); Declaration of S. Lopez, Defendant (ECF No. 90-9); State Court Records; Plaintiff's Prison Grievances; State Regulations and Penal Code; Excerpts from Plaintiff's Deposition taken on November 10, 2020 (ECF No. 90-10, Exh. I); and Prison Records.

///

///

**Request for Judicial Notice**

Defendants request the court to take judicial notice of state court records from prior actions concerning Plaintiff. (ECF No. 90-11.) "Courts may only take judicial notice of adjudicative facts that are not subject to reasonable dispute." United States v. Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003) (citing Fed. R. Evid. 201(b)). "Facts are indisputable, and thus subject to judicial notice, only if they either 'generally known'. . . or capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned[.]" Id. at 909.

The Court may judicially notice the records and filing of other court proceedings. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Bennett v. Medtronic, Inc., 285 F.3d 801, 802 n.2 (9th Cir. 2002). In particular, we "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir.1992); see also Smith v. Duncan, 297 F.3d 809, 815 (9th Cir. 2002) (taking judicial notice of the "relevant state court documents, because those documents have a direct relationship to [petitioner's habeas] appeal"), abrogation on other grounds recognized by Moreno v. Harrison, 245 Fed.Appx. 606 (9th Cir. 2007).

Here, the documents at issue are state court records of Plaintiff's prior actions at Kern County Superior Court, Los Angeles County Superior Court, and California Court of Appeal, which include claims previously raised and adjudicated in state court, as well as criminal adjudications against Plaintiff.

Plaintiff neither denies the authenticity of the documents nor that he faced criminal charges and filed a habeas corpus petition in state court relevant to the case at hand. Consequently, the court takes judicial notice of the documents submitted by Defendants which are part of the record from Plaintiff's underlying state court matters.

A. **CLAIM-PRECLUSION DOCTRINE BARS PLAINTIFF'S CLAIMS**

   1. **Legal Standard**

"Generally speaking, a prior judgment between the same parties 'is *res judicata* on matters which were raised or *could have been raised*, on matters litigated or litigable.'" Kim v.

Reins Int'l Cal., Inc., 9 Cal. 5th 73, 92-93 (2020) (emphasis added) (citation omitted). "Federal courts . . . are required by federal law to apply *res judicata* to state court decisions." S. Pac. Transp. Co. v. Pub. Utils. Comm'n, 716 F.2d 1285, 1290 (9th Cir. 1983) (citing 28 U.S.C. § 1738). The Full Faith and Credit Act "requires federal courts to apply the *res judicata* rules of a particular state to judgments issued by courts of that state." Robi v. Five Platters, Inc., 838 F.2d 318, 322 (9th Cir. 1988) (citing Parsons Steel, Inc. v. First Ala. Bank, 474 U.S. 518, 523 (1986)).

In California, "[c]laim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties [or parties in privity with them] (3) after a final judgment on the merits in the first suit." Furnace v. Giurbino, 838 F.3d 1019, 1023 (9th Cir. 2016) (quoting DKN Holdings LLC v. Faerber, 61 Cal.4th 813, 189 Cal.Rptr.3d 809, 352 P.3d 378, 386 (2015) (citing Mycogen Corp. v. Monsanto Co., 28 Cal.4th 888, 123 Cal.Rptr.2d 432, 51 P.3d 297, 301 (2002)). Under the Full Faith and Credit Statute, 28 U.S.C. § 1738, federal courts must give the same preclusive effect to state court judgments, including "reasoned" habeas judgments, as the rendering state court would. Id. (quoting Gonzales v. Cal. Dep't of Corr., 739 F.3d 1226, 1230–31 (9th Cir. 2014) (citing Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)).

California courts, unlike federal courts, do not determine whether two suits involve the same cause of action by applying the "same transaction or occurrence" or "common nucleus of operative facts" test. Id. at 1024. In determining whether the case or controversy is the same, California applies the "primary rights theory." Boeken v. Philip Morris USA, Inc., 48 Cal. 4th 788, 797 (2010) (quoting Slater v. Blackwood, 15 Cal. 3d 791, 795 (1975)). Under the primary rights theory, "[t]he cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." Id. at 798 (citing Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co., 5 Cal.4th 854, 860 (1993)). "The critical focus of primary rights analysis is the harm suffered." Furnace, 838 F.3d at 1024 (quoting Brodheim v. Cry, 584 F.3d 1262, 1268 (9th Cir. 2016) (citations and internal quotation marks omitted)).

///

Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different legal ground for relief. Id. (internal quotation marks omitted) (quoting Slater, 15 Cal. 3d at 795).

### 2. Defendants' Arguments

Defendants argue that Plaintiff's claims are barred under California's claim-preclusion doctrine because before filing this action he had already raised and lost the same claims in a state-court habeas corpus petition that was denied with prejudice.

### (1) Plaintiff Raised the Same Claims in his Habeas Action and this Action

Defendants provide evidence that in February 2016, Plaintiff filed a petition for writ of habeas corpus in state court making numerous allegations regarding the December 14, 2015 assault (Request for Judicial Notice (RJN), ECF No. 90-11 at 6, RJN002),[6] alleging that Counselors Montoya and Carter attempted to have Plaintiff murdered and placed in harm's way "on the basis of an 'R' suffix fraudulent paperwork, improper practices and the Due Process of the CDC-602 grievances listed herein . . . ," (Id. at 8, RJN004.) Defendants argue that the primary right asserted in Plaintiff's prior habeas corpus petition, and in his amended complaint for this action, is the same. As explained by the superior court, Plaintiff's habeas petition concerned "a multitude of allegations centering around having been assaulted by two inmates" on December 14, 2015,[7] (RJN, ECF No. 90-11 at 55, RJN048), which is the same harm at issue in this § 1983 lawsuit, (See Amend. Cmp., ECF No. 16 at 4 ("On 12/14/15 I was . . . battered by inmates Solman #F38684 and Barger #F46561 on the CCI Facility A Yard.")

Defendants argue that both actions involve the same conduct. In both the habeas petition and this lawsuit, Plaintiff blamed Counselors Montoya and Carter for the "'R' suffix fraudulent paperwork" and "improper practices" with respect to his November 18, 2015 chrono (RJN, ECF

---

[6] All page numbers cited herein are those assigned by the court's CM/ECF system and not based on the parties' pagination of their briefing materials.

[7] Dated November 14, 2015 by the Superior Court (should be December 14, 2015).

No. 90-11 at 8, RJN004; RJN at 19, RJN014; RJN at 24-26, RJN019-021; Amend. Cmp., ECF No. 16 at 3); alleged that Officer Killmer had him attacked on 12-14-15 by two prisoners because of his "R" suffix alleged sex offender rape offense (RJN, ECF No. 90-11 at 6-7, RJN002-003; Amend. Cmp., ECF No. 16 at 4); and alleged that Officer Lopez intentionally gave "computer generated paperwork" to another inmate in order to have Plaintiff murdered, (RJN, ECF No. 90-11 at 6-7, RJN002-003). Because both actions involve the same injury and wrongful conduct, Defendants conclude that they both involve the same primary right.

### (2)  The Prior State Action was a Final Judgment on the Merits

Defendants argue that because Plaintiff's claims were substantively denied and the habeas judgment has not been overturned, it is now final and entitled to preclusive effect. As evidence, Defendants submit that after the judgment, Plaintiff filed a petition for rehearing, arguing, for the first time, that the court should order CDCR's Chief of Appeals to process his grievance. (RJN Ex. 4 at RJN051-052.) The court responded to the petition explaining that "the basis of [Bowell's] claim is conspiracy on the part of the prison to deny his constitutional rights, harm him, and theft of his mail," and finding that Bowell was "attempting to relitigate matters addressed" by the court in its June 2016 ruling, (RJN Ex. 5 at RJN087), thus finding that Plaintiff's petition remained denied with prejudice, (Id. at RJN086-087).

The superior court adequately described and analyzed Plaintiff's claims – "conspiracy on the part of prison officials with inmates to murder him; daily threats of harm by correctional officers; [and] fraudulent paper work contributing to an 'R' Suffix which keeps him in danger of being assaulted" (RJN at 55, RJN048), and a "conspiracy on the part of the prison to deny his constitutional rights [and] harm him" (RJN at 97, RJN087). Plaintiff did not appeal the decision. (RJN at 99-103, Exh. 6.)

### (3)  The Parties or Their Privities are the Same

Defendants argue that the identity-of-parties element is satisfied in this case, because Plaintiff was privy to the state action as the petitioner, and Defendants, although not named as respondents in the habeas action, were in privity with the named respondent – the CCI Warden – because they were all prison officials at CCI. Also argued is that the privity connection is

strengthened, given that each Defendant was specifically referred to in Plaintiff's petition. (See RJN at 6-8, RJN002-RJN004; RJN at 19, RJN014; RJN at 24-26, RJN019-021.

## VII.   DEFENDANTS' BURDEN

Based on Defendants' arguments and evidence in support of their motion for summary judgment based on claim preclusion, the court finds that Defendants have met their burden of demonstrating that Plaintiff's claims are barred by California's claim preclusion doctrine. Therefore, the burden now shifts to Plaintiff to produce evidence of a genuine material fact in dispute that would affect the final determination in this case.

## VIII.  PLAINTIFF'S OPPOSITION

In his opposition, Plaintiff first states that he is unable to properly litigate this case as a prisoner because the law library is closed and he requests a 90-day stay to allow further discovery after his release from custody, at which time he intends to seek private counsel. Plaintiff also requests court-appointed counsel.

Plaintiff's requests for stay, for further discovery, and for court-appointed counsel were denied by the court on January 19, 2021 (ECF No. 89), and Plaintiff's motion for reconsideration of those decisions were denied on April 30, 2021 (ECF No. 99). The only motion now pending in this case is the Defendants' motion for summary judgment. (ECF No. 90.)

Next, Plaintiff states that direct testimony of his witnesses will reveal fraud by defense counsel, Deputy Attorney General Miller, in failing to disclose information to the court. Plaintiff submitted two inmate witness declarations with his First Amended Complaint, signed under penalty of perjury. (ECF No. 16 at 18, 19.) In the first one, inmate John Hoefling declares that C/O S. Lopez gave inmate Sean Shupp Plaintiff's chrono revealing Plaintiff's conviction for willful child cruelty. (ECF No. 16 at 18.) Inmate Hoefling also declares that C/O R. Killmer told inmates that Plaintiff was in prison for rape, and inmate Shupp told a group of inmates that Plaintiff is a child molester. (Id.) In the second declaration, inmate Brian Jennings declares that he overheard a Mexican gang talking to other prisoners about Plaintiff, calling Plaintiff a "chomo," which is prison slang for a child molester. (ECF No. 16 at 19.) One of the gang members said that C/O Lopez gave inmate Shupp Plaintiff's chrono revealing case factors: sex

offense registrant, 25 years to life, ineligible for contact visits with minors, "R" suffix classification for sex offender. (Id.)

Plaintiff has submitted a Statement of Disputed Facts. The Statement of Disputed Facts fails to properly address Defendants' Statement of Undisputed Facts as required by Local Rule 260(b), which provides, in part, "Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." Local Rule 260(b). Plaintiff has not done so. Accordingly, the court may consider Defendants' assertions of fact as undisputed for purposes of this motion. Id; Fed. R. Civ. P. 56(e)(2). In light of the Ninth Circuit's directive that a document filed *pro se* is "to be liberally construed," Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, and Rule 8(e) of the Federal Rules of Civil Procedure that "[p]leadings shall be construed so as to do justice," see Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007), the court shall strive to resolve this motion for summary judgment on the merits.

Plaintiff's Statement of Disputed Facts (ECF No. 92 at 3-4) follows:

## PLAINTIFF'S STATEMENT OF DISPUTED FACTS

1. Indeed defendants D. Carter and F. Montoya conspired to fraudulently place a misdemeanor plea agreement time served PC 273A(1) Willful Cruelty Child W/ Possible Death onto a CDCR-SOMS Chrono having nothing to do with my primary offense. Their motive and intent was to have me murdered is my firm belief. Unlawfully placing misdemeanor charge plea bargain arrest date 4/4/87 unquestionably not on any prison commitment Abstract of Judgment warranting further discovery of defendants and Polygraph Test with the FBI examiner, i.e. outright lies which jurist can debate why after conviction in 1991 PA003248 24 years later?

2. Concise and to the point S. Shupp will testify at trial that Correctional Officer S. Lopez handed to him personally my CDCR-SOMS's Classification Chrono dated 11/19/15 making it appear as if I am a rapist child molester ineligible for contact visits with minors? Thereafter I was attacked 12/14/15.

3. Being in the loop of prison inmates Jon Hoefling will testify that Correctional Officer R. Killmer did indeed show inmates the computer screen of certain inmates crime of conviction. Motive and intent to be attacked or murdered!

4. In the separate statement by Byron M. Miller, DAG, quote: 49. Bowell had talked with other inmates about his rape conviction, i.e., that is a falsehood. I have never been convicted of rape!

5. In the defendants' notice and motion for summary judgment 1/25/21 argument on page 7 fraudulently stating: Bowell is barred under California's claim preclusion doctrine because the present cause of action is the same as in the prior proceeding. That is not the case at all, the Kern County Superior Court was only to force CCI to process my CDCR-602 Second Level Appeal Grievance in order to exhaust third level in Sacramento to file § 1983 fully exhausted administrative remedies. In fact, I did have to file a petition in the Fresno 5th Appellate District Court of Appeal 2424 Ventura St. 93721 in order to get Third Level to state CDCR Appeal has been exhausted? Theft via CCI employees to sabotage my due process rights under the U.S. Constitution's 14th Amendment.

Plaintiff has also submitted a Statement of Undisputed Facts (ECF No. 92 at 4), as follows:

## PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

I am being deprived of proper discovery as an incarcerated prisoner Pro Se entitled to the same tools material evidence as any state bar member!

Specification of the particular facts, why did CCI Appeals Coordinators refuse to provide to me a copy of the stolen grievance appeal and process at the second level knowing their intent was to deprive me of administrative exhaustion in order to file this Federal Lawsuit. It is necessary to uncover all the various appeals that have been stolen via defendants at CCI over the years that I was incarcerated there, in fact, officers stole my Court of Appeal Financial Ability to Pay Forms being mailed back to the court in 1992 and my first appeal as of right was dismissed warranting further investigation into defendants motive and intent?

Stipulated facts, I need a Law Firm Team of Lawyers working in my behalf to conduct investigations, prepare for a civil jury trial with law degrees capable experienced to resolve this controversy dispute with evidentiary documents. Miller v. French, (2000) 120 S. Ct. 2246, establishing prerequisites for a stay.

## EXPERT WITNESSES

Further discovery motions, points of law, disclosures personal injuries involving wrongdoing of the department of justice personnel counsel for the defendants taking advantage of an old man wrongfully incarcerated for over 30 years being held hostage unconstitutionally, unlawfully, via CDCR defendants in Case 2:18-cv-02726-MCE-DMC U.S. District Court in Sacramento pending motion to reopen dated 1/13/21.

Highly suspicious activity attempted murder of plaintiff in the instant case warranting the appointment of counsel in the interest of justice to defend the U.S. Constitutional rights as a citizen falsely imprisoned for many years!

## IX. CLAIM PRECLUSION -- ANALYSIS

Defendants have presented evidence that Plaintiff's prior state habeas action case number HC015027A, filed on February 17, 2016, in the Kern County Superior Court both involves the

same harm and wrong by Defendants, (RJN, ECF No. 90-11 at 6-12, RJN002-RJN008), that Plaintiff was assaulted and injured by two inmates on December 14, 2015, (RJN, ECF No. 90-11 at 6-7, RJN 0002-003, 55, RJN048), which is the same harm at issue in this § 1983 lawsuit, (See Amend. Cmp., ECF No. 16 at 4 ("On 12/14/15 I was . . . battered by inmates Solman #F38684 and Barger #F46561 on the CCI Facility A Yard.")

In opposition, Plaintiff argues that claim preclusion does not apply because the Kern County Superior Court case was only to force CCI to process his CDCR-602 Second Level Appeal Grievance in order to exhaust the third level in Sacramento so he could file a § 1983 case after fully exhausting administrative remedies. (ECF No. 92 at 4 ¶ 5.)

The record shows that Plaintiff did request a response to his grievance in his habeas case HC015027A. Plaintiff alleged in the habeas case, "I am a victim in fear of my life and safety at California Correctional Institution, Warden Kim Holland is obstructing due process of my CDC-602 grievance forms, stolen by prison administration employees implicated with attempted murder of me on 12-14-15 (RJN, ECF No. 90-11 at 7, RJN003) and he requests the court to "[e]nforce this court's jurisdiction power ordering Kim Holland, Warden, to respond to this grievance complaint forthwith," (RJN, ECF No. 90-11 at 8, RJN004). However, as Defendants argue,

> "[T]he record reveals that, in addition to seeking to have his administrative appeal processed, Bowell's habeas petition levied substantive claims against Defendants based on the same conduct at issue here. In particular, Bowell's petition described the same alleged conduct of Defendants at issue here, and he specifically claimed "due process" and "cruel and unusual punishment" violations under the state constitution. (See RJN, ECF No. 90-11 at 6-7.) And Bowell alleged that he had "no other alternative but to lodge in this court's jurisdiction my formal complaint pursuing safety." (See RJN, ECF No. 90-11 at 7.) Thus, in addition to seeking to have his administrative grievance processed, Bowell's petition indicated that he was substantively challenging Defendants' alleged conduct.

(ECF No. 93 at 5:4-13.)

The Court finds that the three requirements for claim preclusion are satisfied in this case. First, this § 1983 case and Plaintiff's prior habeas corpus case number HC015027A, filed on February 17, 2016, in the Kern County Superior Court involve the same harm and wrong by Defendants, the assault and injury of Plaintiff at CCI on December 14, 2015, by two inmates, (RJN, ECF No. 90-11 at 55, RJN048), which is the same harm at issue in this § 1983 lawsuit, (See Amend. Cmp., ECF No. 16 at 4 ("On 12/14/15 I was . . . battered by inmates Solman #F38684 and Barger #F46561 on the CCI Facility A Yard.")

Both actions also involve the same wrongful conduct. In both the habeas petition and this lawsuit, Plaintiff blamed Counselors Montoya and Carter for the "'R' suffix fraudulent paperwork" and "improper practices" with respect to his November 18 (19), 2015 chrono (RJN, ECF No. 90-11 at 8, RJN004; RJN at 19, RJN014; RJN at 24-26, RJN019-021; Amend. Cmp., ECF No 16 at 3); alleged that Officer Killmer had him attacked on 12-14-15 by two prisoners because of his "R" suffix alleged sex offender rape offense, (RJN, ECF No. 90-11 at 6-7, RJN002-003; Amend. Cmp., ECF No. 16 at 4); and alleged that Officer Lopez intentionally gave "computer generated paperwork" to another inmate in order to have Plaintiff murdered, (RJN, ECF No. 90-11 at 6-7, RJN002-003). Even if the legal theories presented and remedies sought in the state court proceedings may differ from those presented in this action, the fact remains that his present and prior proceedings arise from the same conduct and involve the same injury to Plaintiff and the same wrong by Defendants. See Eichman v. Fotomat Corp., 147 Cal. App. 3d 1170, 1174 (1983) ("[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery."); see also San Diego Police Officer's Ass'n, 568 F.3d at 734 ("What is critical to the analysis 'is the harm suffered ...' ").

Therefore, the court finds that the instant § 1983 case involves the same cause of action as Plaintiff's prior habeas corpus case HC015027. This satisfies the first requirement for claim preclusion.

///

The remaining requirements for claim preclusion are also satisfied. Plaintiff's prior habeas action resulted in a final judgment on the merits, as his petition was denied. (RJN, ECF No. 90-11 at 53, 56, RJN047, 049; RJN at 95, 97, RJN086-087), and he did not appeal the decision, (RJN at 99-103, Exh. 6). Plaintiff does not dispute that there was a final judgment on the merits rendered in the prior state habeas proceedings. This satisfies the second requirement for claim preclusion.

Finally, the privity requirement is satisfied as Plaintiff brought the prior state habeas action. Plaintiff was the same party in the state habeas action, and Defendants, although not named as respondents in the habeas action, were in privity with the named respondent – the CCI Warden – because they were all prison officials at CCI. Plaintiff was the same party in the state habeas actions, and Defendants were in privity with the Respondent (Warden} in the State habeas actions. Privity exists when a person is so identified in interest with another that he represents the same legal right. See Trujillo v. Santa Clara County, 775 F.2d 1359, 1367 (9th Cir. 1985). For example, privity exists "between officers of the same government so that a judgment in a suit between a party and a representative of the [government] is *res judicata* in relitigation of the same issue between that party and another officer of the government." See Church of New Song v. Establishment of Religion on Taxpayers' Money, 620 F.2d 648, 654 (7th Cir. 1980), cert. denied, 450 U.S. 929 (1981) (citation omitted) (prison employees at federal prison in Texas in privity with prison employees at federal prison in Illinois as both suits against employees of Federal Bureau of Prisons) (quoting Sunshine Coal Co. v. Adkins, 310 U.S. 381, 402-03 (1940)). Such is the case here, where Defendants in the instant action were in privity with Respondent in Plaintiff's state habeas actions as all are against CDCR employees. Therefore, the three requirements for claim preclusion based on Plaintiff's prior state habeas proceedings are satisfied in this action.

Plaintiff fails to make arguments or present evidence in opposition to the above elements of claim preclusion. The court finds that Plaintiff has failed to demonstrate that his present case is not barred by the State's claims preclusion doctrine. Thus, upon consideration of Plaintiff's

prior state habeas proceedings, the Court finds that Defendants are entitled to summary judgment in this action on the basis of claim preclusion.

## X.      CONCLUSION AND RECOMMENDATIONS

The Court has found that Plaintiff's prior habeas corpus action contains the same cause of action between parties in privity as this § 1983 case, and the habeas action resulted in a final judgment on the merits. Therefore, California's claim preclusion doctrine bars Plaintiff's § 1983 case and Defendants are entitled to summary judgment. Based on this finding, the Court need not go further in its analysis of Defendants' motion for summary judgment.

Accordingly, based on the foregoing, **THE COURT HEREBY RECOMMENDS** that:

1.      Defendants' motion for summary judgment, filed on January 25, 2021, be GRANTED; and

2.      The Clerk of Court be directed to enter judgment in favor of Defendants and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** from the date of service of these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **ten (10) days** of the date the objections are filed. The parties are advised that failure to file objections within the specified time may waive the right to appeal the order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   __May 10, 2021__          _____/s/ Gary S. Austin_
                                    UNITED STATES MAGISTRATE JUDGE